IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> MICHAEL ALLEN DUKE, : <br> MARTIN DELAINE LEWIS, : <br> MARK CHRISTOPHER PARMAN, : <br> KENNETH EDWARD SHELTON, AND : <br> BILLY RAY STATHAM, JR., : <br> : <br> Defendants. : <br> : | Civil Action No.: |

## COMPLAINT

Plaintiff, Securities and Exchange Commission (the "Commission"), alleges as follows:

### SUMMARY OF THE ACTION

1. Between February 2014 and December 2016, Defendants Michael Allen Duke, Martin Delaine Lewis, Mark Christopher Parman, Kenneth Edward Shelton, and Billy Ray Statham, Jr., (collectively, "Defendants") solicited, or aided and abetted the solicitation of, hundreds of investors throughout the United States and Canada as part of an unregistered offering of the securities of Intertech Solutions, Inc. ("ITEC"), a Nevada Corporation.

2. While engaged in these solicitations, Defendants were neither registered with the Commission as brokers or dealers nor associated with a broker or dealer registered with the Commission.

3. ITEC paid Defendants transaction-based compensation, which ranged from 30% to 50% of investment proceeds. These compensation rates were substantially higher than what was disclosed to investors.

4. By engaging in this conduct, as further described herein, each of the Defendants, excluding Defendant Statham, violated and, unless restrained and enjoined by this Court, may continue to violate Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)] and Section 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78o(a)(1)].

5. Through his conduct, Defendant Statham aided and abetted violations of Section 15(a)(1) of the Exchange Act and, unless restrained and enjoined by this Court, may continue to violate said provision.

## JURISDICTION AND VENUE

6. The Commission brings this action pursuant to Sections 20(b) and (d) of the Securities Act [15 U.S.C. § 77t(b) and (d)] and Sections 21(d) and (e) of the Exchange Act [15 U.S.C. § 78u(d) and (e)] to enjoin such acts, practices, and courses of business, and to obtain disgorgement, prejudgment interest, civil money penalties, and such other and further relief as this Court may deem just and appropriate.

7. The investments, which took the form of common stock or investment contracts, offered and sold by Defendants, are each a "security" as that term is defined under Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b(a)(1)] and Section 3(a)(10) of the Exchange Act [5 U.S.C. § 78c(a)(10)].

8. The Defendants, directly or indirectly, made use of the means or instruments of transportation or communication in interstate commerce, or of the mails, in connection with the conduct alleged in this Complaint.

9. This Court has subject matter jurisdiction over this action pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v], Sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and 78aa], and 28 U.S.C. 1331.

10. Venue in this District is proper because each of the Defendants is found, inhabits, and/or transacted business in the Northern District of Texas and because one or more acts or transactions constituting the violations occurred in the Northern District of Texas.

## DEFENDANTS

11. **Kenneth Edward Shelton**, born in 1974, is last known to reside in Dallas, Texas. Shelton, was recruited to solicit investors in ITEC securities, operated a sales office out of Dallas, Texas, and employed several individuals to solicit investors in ITEC securities.

12. **Mark Christopher Parman**, born in 1969, is currently serving a six-year sentence in a Texas state prison after pleading guilty to state securities fraud charges in 2017. Parman, who was Shelton's business partner, was recruited to solicit investors in ITEC securities and assisted in the operations of the Dallas sales office.

13. **Michael Allen Duke**, born in 1968, is last known to reside in Dallas, Texas. Duke was recruited by an individual based in California, "DB," to solicit investors in ITEC securities.

14. **Martin Delaine Lewis**, born in 1967, is last known to reside in Frisco, Texas. Lewis was recruited by Shelton to solicit investors in ITEC securities from the Dallas sales office.

15. **Billy Ray Statham, Jr.**, born in 1971, is last known to reside in Rockwall, Texas. Statham served as a middleman for an individual who solicited investments in ITEC securities. Statham and received a portion of that solicitor's transaction-based payments.

## FACTS

### Intertech Solutions, Inc.'s Securities Offerings

16. ITEC is a Nevada corporation formed April 2010 with its principal place of business in Scottsdale, Arizona.

17. ITEC purports to be a project finance and management company for mining operations.

18. In or around November 2013, ITEC entered into an agreement with the mineral rights holder of certain mining claims in La Paz County, Arizona (the "Arizona Claims"). Pursuant to the agreement, ITEC was to obtain the necessary funding to bring the Arizona Claims into commercial gold production in exchange for a percentage interest in the gross proceeds of any gold obtained from the Arizona Claims.

19. Purportedly to fulfill its obligations under this agreement, ITEC initiated an offering of its common stock in or around February 2014.

20. In or around August 2014, ITEC also began offering "Sale/Purchase and Processing Agreement for In Situ Au Metal" (the "Gold Contracts"), which are investment contracts. The Gold Contracts gave investors the right to purchase a specified amount of gold from the Arizona Claims' future production at a highly discounted price relative to the then spot price of gold. ITEC pooled the funds it received from its sale of Gold Contracts.

21. Because the Arizona Claims were undeveloped throughout the duration of the Gold Contract offering, the profitability of the Gold Contracts depended on ITEC's and the mineral rights holder's ability to develop the Arizona Claims and begin commercial-level gold extraction.

## The Securities Solicitations

22.     To carry out its offerings of common stock and Gold Contracts, ITEC recruited, directly or indirectly, various individuals to solicit prospective investors, among which were each of the Defendants.

23.     Defendants Shelton and Parman set up a sales office in Dallas, Texas, and recruited several individuals to work under them soliciting investments in ITEC securities. Defendant Lewis was among those solicitors who worked under Shelton and Parman in the Dallas office.

24.     To facilitate its securities offerings, ITEC provided the solicitors with offering documents, including private placement memoranda ("PPM").

25.     Defendants Shelton and Parman obtained lead lists of prospective investors who resided throughout the United States and Canada and used those lead lists to engage in cold-call solicitations.

26.     After initiating contact with prospective investors over the phone, Defendants Shelton, Parman, Lewis, and Duke typically mailed or emailed the offering documents, including a PPM, to the prospects, and directed the prospects to visit ITEC's website.

27.     If an investor decided to purchase ITEC common stock or Gold Contracts, Defendants Shelton, Parman, Lewis, and/or Duke instructed the investor to execute and submit to ITEC a stock subscription agreement or a Gold Contract and to send investment funds via either check or wire to be deposited into ITEC's bank account.

28.     While engaged in these solicitations, Defendants Shelton, Parman, Lewis, and Duke were neither registered with the Commission as brokers or dealers nor associated with a broker or dealer registered with the Commission.

5

29. ITEC continued its common stock and Gold Contract offerings through December 2016 and raised over $7 million from hundreds of investors throughout the United States and Canada.

30. ITEC never registered its common stock or Gold Contract offerings with the Commission.

### Defendants' Compensation

31. Using the investment funds it received through its sale of securities, ITEC paid Defendants Shelton, Parman, Lewis, and Duke transaction-based compensation ranging from approximately 35% to 50% of the total investment proceeds, which was often split among two or more solicitors.

32. Neither ITEC nor Defendants Shelton, Parman, Lewis, or Duke disclosed to investors the size of these commission payments.

33. Instead, the only disclosure regarding commissions was found in the PPMs, which stated that ITEC would expend only 10% of investor funds for "Discounts & Commissions."

34. Defendants Shelton, Parman, Lewis, and Duke had access to the PPMs and therefore should have known that the PPM disclosure regarding "Discounts & Commissions" was false or misleading.

### Defendant Statham's Role

35. Although Defendant Statham is not presently known to have personally solicited investors in ITEC securities, he served as a nominee payee for one ITEC solicitor, "AB."

36. AB initially began soliciting investors in ITEC securities as part of Shelton's Dallas sales team, but he later realized that he could earn higher commissions if he separated from Shelton and set up his own independent sales office.

37. In order to avoid alerting Shelton to his intentions to work independently, AB approached Statham, who was AB's acquaintance, and asked for Statham's assistance in carrying out AB's plan.

38. Statham agreed, and he and AB entered into a ruse whereby Statham established an independent sales office in his own name and allowed AB to use his name when soliciting investors. To further the ruse, Statham provided ITEC with his own bank account information for purposes of receiving the commission payments due on Bevil's sales.

39. In exchange for his assistance, Statham retained a portion of AB's transaction-based compensation, which amounted to 10% of the total investment proceeds AB brought in.

## FIRST CLAIM FOR RELIEF
### Violations of Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)]
*(Against each of Defendants Duke, Lewis, Parman, and Shelton)*

40. The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1–39, inclusive, as if they were fully set forth herein.

41. By engaging in the conduct described above, Defendants Duke, Lewis, Parman, and Shelton:

   a. engaged in the business of effecting transactions in securities for the account of others; and

   b. directly or indirectly, made use of the mails or the means or instrumentalities of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of, securities without being registered as a broker or dealer with the Commission or associated with a broker or deal registered with the Commission, and therefore violated Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

42. By reason of the foregoing, Defendants Duke, Lewis, Parman, and Shelton violated and, unless enjoined, will continue to violate Sections 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

## SECOND CLAIM FOR RELIEF
**Violations of Sections 5(a) and (c) of the Securities Act [15 U.S.C. § 77e(a) and (c)]**
*(Against each of Defendants Duke, Lewis, Parman, and Shelton)*

43. The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1–39, inclusive, as if they were fully set forth herein.

44. By engaging in the conduct described above, Defendants Duke, Lewis, Parman, and Shelton, directly or indirectly:

    a. made use of means or instruments of transportation or communication in interstate commerce or of the mails to sell ITEC securities, as to which no registration statement was in effect, through the use or medium of any prospectus or otherwise;

    b. carried or caused to be carried through the mails or in interstate commerce, by any means or instrument of transportation, ITEC securities, as to which no registration statement was in effect, for the purpose of sale or for delivery after sale; and,

    c. made use of any means or instruments of transportation or communications in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise ITEC securities as to which no registration statement had been filed.

45. In regard to the sale of ITEC securities described herein, no exemption validly applied to the registration requirements described above.

46. By reason of the foregoing, Defendants Shelton, Parman, Lewis, and Duke violated and, unless enjoined, will continue to violate Sections 5(a) and (c) of the Securities Act [15 U.S.C. § 77e(a) and (c)].

### THIRD CLAIM FOR RELIEF
**Violations of Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)]**
*(Against each of Defendant Duke, Lewis, Parman, and Shelton)*

47. The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1–39, inclusive, as if they were fully set forth herein.

48. By engaging in the conduct described above, each of Defendants Duke, Lewis, Parman, and Shelton, directly or indirectly, individually or in concert with others, in the offer and sale of securities, by use of the means and instruments of transportation and communication in interstate commerce or by use of the mails have obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

49. Each of Defendants Duke, Lewis, Parman, and Shelton was at least negligent in their conduct and in disseminating the untrue and misleading statements alleged herein.

50. By reason of the foregoing, each of Defendants Duke, Lewis, Parman, and Shelton violated and, unless enjoined, will continue to violate Section 17(a) of the Securities Act.

### FOURTH CLAIM FOR RELIEF
**Violations, via aiding and abetting of Section 15(a)(1) of the Exchange Act**
**[15 U.S.C. § 78o(a)(1)]**
*(Against Defendant Statham)*

51. The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1–39, inclusive, as if they were fully set forth herein.

52. By engaging in the conduct described above, AB, directly or indirectly, made use of the mails or the means or instrumentalities of interstate commerce to effect transactions in, or

to induce or attempt to induce the purchase or sale of, securities without being registered as a broker or dealer with the Commission or associated with a broker or dealer registered with the Commission, and therefore violated Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)]; and Defendant Statham knowingly or recklessly provided substantial assistance to AB in his achievement of said violations.

53. Pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)], any person that knowingly or recklessly provides substantial assistance to another person in violation of a provision of the Exchange Act, or of any rule or regulation issued under the Exchange Act, shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided.

54. By reason of the foregoing, Defendant Statham is liable for violations of Section 15(a)(1) of the Exchange Act to the same extent as AB is liable and, unless enjoined, will continue to violate Section 15(a)(1) of the Exchange Act.

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court enter a final judgment:

**I.**

Permanently restraining and enjoining each of the Defendants from, directly or indirectly, engaging in conduct in violation of Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)]

**II.**

Permanently restraining and enjoining each of Defendants Duke, Lewis, Parman, and Shelton from, directly or indirectly, engaging in conduct in violation of Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)];

### III.

Permanently restraining and enjoining each of the Defendants from directly or indirectly, including, but not limited to, through any entity owned or controlled by any of them, soliciting any person or entity to purchase or sell any security;

### IV.

Ordering each of the Defendants to disgorge all ill-gotten gains or unjust enrichment derived from the activities set forth in this Complaint, together with prejudgment interest thereon;

### V.

Ordering each of the Defendants to pay a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and/or Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

### VI.

Permanently and unconditionally restraining and enjoining each of the Defendants from participating in any offering of penny stock pursuant to Section 20(g)(1) of the Securities Act [15 U.S.C. § 77t(g)(1)] and/or Section 21(d)(6)(A) of the Exchange Act [15 U.S.C. § 78u(d)(6)(A)];

### VIII.

Retaining jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court; and,

## IX.

Granting such other and further relief as this Court may deem just, equitable, or necessary in connection with the enforcement of the federal securities laws and for the protection of investors.

Dated: April 8, 2019.

Respectfully submitted,

/s/ Janie L. Frank

Janie L. Frank
Texas Bar No. 07363050
U.S. SECURITIES AND EXCHANGE COMMISSION
Fort Worth Regional Office
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX 76102-6882
(817) 978-6478 (phone)
(817) 978-4927 (facsimile)

Amy J. Oliver (Utah #8785) (*Pro Hac Vice Pending*)
U.S. SECURITIES AND EXCHANGE COMMISSION
Salt Lake Regional Office
351 South West Temple, Suite 6.100
Salt Lake City, Utah 84101
(801) 524-5796 (phone)
(801) 524-3558 (facsimile)

COUNSEL FOR PLAINTIFF UNITED STATES
SECURITIES AND EXCHANGE COMMISSION